3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BELLCO DRUG CORP., | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLOBAL SUPPLY FORCE, INC., et al. | : | NO. 07-4872 |

**FILED**

JUL 2 5 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**L. Felipe Restrepo**
**United States Magistrate Judge**

**July 24, 2008**

## MEMORANDUM AND ORDER

This breach of contract action arises from a June 2005 purchase agreement between Bellco Drug Corporation ("Bellco"), a New York corporation, and Global Supply Force, Inc. ("Global"), a Delaware corporation, whereby Bellco agreed to sell pharmaceuticals to Global. See Compl. ¶¶ 4-5, 7 (Doc. No. 1.); see also Compl., Ex. A (June 8, 2005 Purchase Agreement). The district court has diversity jurisdiction over this matter. See 28 U.S.C. § 1332(a)(1). New York law applies.

Plaintiff, Bellco, filed a complaint against Global in this Court on or about April 16, 2007, alleging breach of contract.[1] See Compl. According to the Complaint, Bellco sold and delivered various pharmaceuticals to Global from March 30, 2006 to April 28, 2006, but Global failed to make any payments for the delivered goods to Bellco after April 29, 2006. See Compl. ¶¶ 9-10. Global subsequently filed a counterclaim against Bellco on or about March 24, 2008, alleging breach of contract, fraud, negligent misrepresentation, interference with contractual relations, and interference with prospective business relations. See Countercls. ¶¶ 11-18.

---

[1] Deborah Dersham, President of Global Supply Force Inc., is also a named defendant in this action. See Compl. ¶ 6.

Bellco's Motion to Dismiss Global's counterclaims and Global's Response is presently before the Court.  See Pl.'s Mot. Dismiss Countercls. (Doc. No. 18); Def.'s Resp. in Opp. Mot. Dismiss Countercls. (Doc. No. 21); Def.'s Mem. in Opp. Mot. Dismiss Countercls. (Doc. No. 22).

A.      GLOBAL'S FACTUAL ALLEGATIONS AND COUNTERCLAIMS

On or about June 8, 2005, Global and Bellco executed an installment contract for the sale of goods (hereinafter "Purchase Agreement"), specifically certain pharmaceuticals.

The "Terms and Conditions" of the signed Purchase Agreement state that Global must pay Bellco within thirty days unless Bellco agrees to alternate terms in writing (though the Purchase Agreement does not set forth whether the thirty-day payment period begins on the date the good were ordered, the date of shipment, or the date of delivery).  See Compl., Ex. A (Purchase Agreement).  The Purchase Agreement also states that "Bellco may in its sole discretion, at any time, and from time to time, change [Global's] credit terms, cost of goods, discount, services, programs, or stop shipments or require payment in cash before shipment. [Global] agrees to allow Bellco to process ["]ACH debits["] to [Global's] bank account(s) on any involved amounts that are greater than 30 days past terms due date."  See id.  Further, the Purchase Agreement states that "[a] finance charge of 1.5% per month (18% per annum) will be charged on all invoices past payment terms."  See id.  The "Terms and Conditions" of the June 8, 2005 Purchase Agreement are signed by Deborah Dershem, President of Global, and "prompt and full performance and payment" under the terms of the Purchase Agreement is personally guaranteed by Ms. Dershem.  See id.

In response to Bellco's claim that Global is in default of the Purchase Agreement for

2

failure to pay the balance it owes Bellco for delivered goods, Global avers the following facts.

Subsequent to the signing of the Purchase Agreement, Global alleges that the parties conducted business regarding the shipping and financing of products via "a course of business/performance that was inconsistent with the terms of the Purchase Agreement." See Countercls. ¶ 22. "As of the spring of 2006," Global alleges that it had not paid "Net 30 days" on its account, resulting in a balance of approximately $900,000.00. Id. at ¶ 23. "[I]n the spring of 2006," Global claims that, in response to its non-payment, Bellco stopped shipments under the purchase agreement "without concern as to the affect of the suspension of upon Global." Id. at ¶ 24. Consequently, Global claims it had no access to "a wholesale source of product to fill its customer's orders or a means to finance the wholesale purchase of the product." Id. at ¶ 29. As a result, Global alleges that it lost gross revenues, profits, and customers. Id. at ¶ 30.

Global claims that Bellco subsequently reinstated its line of credit "upon the condition that [Global's] orders were paid in advance, together with fifteen percent (15%) of the costs of the order to pay down the balance of the [a]ccount/line of credit." Id. at ¶ 31. Global states that it had paid down approximately $200,000 (from $900,000 to $700,000) on its account/line of credit with Bellco, id. at ¶ 31, when Bellco stopped shipments for a second time "in the summer of 2006." Id. at ¶ 32.

"In the middle of the summer of 2006," Global alleges that Bellco reinstated Global's account/line of credit for a second time "upon condition of payment of the order, together with an addition[al] five percent (5%) of the order to reduce [Global's] balance." Id. at ¶ 35. "In the fall of 2006," Global alleges that Bellco stopped shipments yet again. Id. at ¶ 36.

In October of 2006, Global asserts that Bellco reinstated its Account/line of credit for a

3

third time "upon condition of prepayment of the order, together with ten percent (10%) of the cost thereof to pay down [Global's] balance." Id. at ¶ 37.  By this time, Global claims, Bellco did not have enough product to meet Global's demand, and Global continued to lose gross revenues, profits, and customers as a result. Id. at ¶ 37.  "By January of 2007," Global alleges that, when it had only one customer remaining, Bellco stopped shipments to Global for a fourth and final time. Id. at ¶ 38.

Global asserts that it was "misled and prejudiced by Bellco's attempt to stand by the provisions of its Purchase Agreement[,] as Global had reasonably relied upon Bellco's course of dealing/conduct during the course of their contractual relationship." Id. at ¶ 26.  In following this alleged "course of dealing/conduct," Global finds that "Bellco acquiesced to Global's not paying the Account 'Net 30 days,'" id. at ¶ 27, and, accordingly, Bellco is estopped from bringing a claim for breach of contract against Global for the outstanding balance.  Id. at ¶¶ 27-28.

Based on these allegations, Global filed a counterclaim against Bellco consisting of five counts: breach of contract, fraud, negligent misrepresentation, intentional interference with contractual relations, and interference with prospective business relations.  See Countercls. ¶¶ 40-76. After reviewing the standard the Court must apply to a motion to dismiss, I will address each of Global's counterclaims in order.


B.    STANDARD FOR MOTION TO DISMISS

When reviewing a party's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true, and construe all inferences in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69,

73 (1984); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  The same standard applies to a motion to dismiss a counterclaim; a court must view all allegations in the counterclaim as true and construe all inferences in the light most favorable to the defendant.[2]  <u>United States v. Union Gas Co.</u>,  743 F. Supp. 1144, 1150 (E.D. Pa. 1990).

At the motion to dismiss stage, the court considers whether the counterclaim plaintiff is entitled to offer evidence to support the allegations in the counterclaim.  <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d. Cir. 2000).  When performing its analysis, a court primarily considers the allegations in the pleading, but is not required to consider legal conclusions alleged in the counterclaim.  <u>Kost</u>, 1 F.3d at 183.  A counterclaim should be dismissed if the court, from evaluating the allegations, is certain that no set of facts warrants relief.  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Markowitz v. Northeast Land, Co.</u>, 906 F.2d 100, 103 (3d Cir. 1989).  In addition, a court may dismiss a claim under Rule 12(b)(6) where there is a dispositive issue of law.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989).

C.   <u>COUNT I: BREACH OF CONTRACT</u>

Count I of Global's Counterclaim asserts a claim for breach of contract.  <u>See</u> Countercls., Count I.  Specifically, Global alleges that "Bellco breached its duty of good faith by stopping shipments on Global's Account/suspending its line of credit on four [] separate occasions, without concern as to the affect of the suspensions upon Global . . .," Countercls. ¶ 44, and "in wanton and reckless disregard of the duty of good faith owed to Global . . ." Countercls. ¶ 45. Global further asserts that "as a direct and proximate result of Bellco's breach of the duty of good

_____

[2] Hereinafter referred to as the "counterclaim plaintiff."

5

faith, Global lost gross revenues, profits and customers and Dershem's profit/income from the operation of Global was decreased dramatically." Countercls. ¶ 46.

Under New York law, an obligation of good faith and fair dealing is implied in every contract. See Gordon v. Nationwide Mut. Ins. Co., 285 N.E.2d 849, 854 (N.Y. 1972). The obligation of good faith and fair dealing may operate "in aid and furtherance of other terms of the contract," **but may not be inconsistent with the express terms of the contract between the parties**. Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 91 (N.Y. 1983). However, Richbell Information Services, Inc. v. Jupiter Partners, L.P. created the following exception to this rule: where a party to a contract acts in bad faith for the purpose of frustrating the other party's right to benefit from the contractual agreement, the obligation applies regardless of the contractual terms. 765 N.Y.S.2d 575, 587 (N.Y. App. Div. 2003).

Bellco argues that Global's counterclaim fails "to establish that Bellco breached any duty of good faith and fair dealing[,] or that Bellco acted arbitrarily and without sound reasoning." Pl.'s Mot. Dismiss Countercls. ¶ 10. Bellco argues that Global's allegations suggest an obligation of good faith and fair dealing inconsistent with the express terms of the parties' contract. Pl.'s Mem. in Supp. of Mot. Dismiss Countercls. ¶ 10. Specifically, Bellco points to the "Terms and Conditions" of the Purchase Agreement, which, as aforementioned, state that "Bellco may in its sole discretion, at any time, and from time to time, change [Global's] credit terms, cost of goods, discount services, programs, or stop shipments or require payment in cash before shipment." Compl., Ex. A, (June 8, 2005 Purchase Agreement). Bellco argues that the interpretation of the obligation of good faith and fair dealing suggested by Global would impermissibly bar Bellco from exercising its express rights under the Purchase Agreement. I

6

agree.  See Murphy, 448 N.E.2d at 91.

As Bellco correctly asserts in its Response, the facts of this case are analogous to those in

Murphy v. American Home Products Corporation.  See Pl.'s Mem. in Supp. of Mot. Dismiss

Countercls. ¶¶ 9-10.  In Murphy, the New York Court of Appeals denied the plaintiff's request to

imply a covenant of good faith and fair dealing to bar an employer from firing an "at will"

employee for reporting improprieties because such an obligation would interfere with the

employer's "unfettered right to terminate [at will] employment at any time." 448 N.E.2d at 91;

see also Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 596 N.Y.S.2d 230, 231-32 (N.Y.

App. Div. 1993) (dismissing a counterclaim for breach of the implied covenant of good faith and

fair dealing because the obligation would contradict the "sole discretion" granted to the plaintiff

in the parties' agreement).  Similarly, the discretion granted to Bellco to stop shipments and alter

Global's credit line at any time cannot be contradicted by an interpretation of the obligation of

good faith and fair dealing that would bar Bellco from exercising its contractual rights to halt

shipments and suspend credit.

Further, Global does not present facts triggering the exception created in Richbell

Information Services, Inc.  In Richbell Information Services, the defendants contracted with the

plaintiffs to form a corporate vehicle to carry out a joint venture to acquire a third party company.

765 N.Y.S.2d at 577.  The defendants structured transactions to keep the plaintiffs in debt and,

unbeknownst to the plaintiffs, entered into a secret "bid rigging agreement" designed to ensure

the plaintiffs' default under the contract. 765 N.Y.S.2d at 577-81.  Under the terms of the

contract, the plaintiffs were entitled to the surplus earned over the joint venture's debt.  Id. at

582.  However, the defendants ensured that no surplus would be earned by intentionally keeping

the sale price for the plaintiffs' pledged shares artificially low. Id. As a result of the defendants'
deliberate malfeasance, the plaintiffs were forced into bankruptcy. Id.

Global has not alleged that Bellco acted in such an egregious manner. Rather, Global
merely asserts that Bellco suspended shipments "without concern" for the effect of its actions on
Global, Countercls. ¶ 44, and in "wanton and reckless disregard of the duty of good faith,"
Countercls. ¶ 45, which does not rise to the level of the secret "bid rigging agreement" in
Richbell Information Services, Inc. See e.g. Sterling Fifth Assoc. v. Carpentille Corp., Inc., 779
N.Y.S.2d 485, 486-87(N.Y. App. Div. 2004) (finding that Richbell Information Services, Inc. did
not apply because there was no "secret agreement" and the affiliation at issue was fully disclosed
to the partnership); O'Neill v. Warburg, Pincus & Co., 833 N.Y.S.2d 461, 462-463, (N.Y. App.
Div. 2007) (finding that Richbell Information Services, Inc. did not apply because there was no
"secret agreement" and "the defendant exercised its contractual right in exactly the manner
contemplated by the parties"). Thus, the general rules regarding the interpretation of the
obligation of good faith and fair dealing apply.

Global's initial allegations seem to imply that Global might attempt to assert that the
express terms and conditions of the Purchase Agreement were altered by the parties' subsequent
course of performance. See Countercls. ¶ 26 (stating that Global was "misled and prejudiced by
Bellco's attempt to stand by the provisions of its Purchase Agreement as Global had reasonably
relied upon Bellco's course of dealing/conduct during the course of their contractual
relationship."); see also UCC § 2-208 (Course of Performance or Practical Construction).
However, Global does not ultimately bring its breach of contract counterclaim under that theory,
but instead invokes the obligation of good faith and fair dealing. Because Global does not claim

8

that the Purchase Agreement was altered by the parties' course of performance, I will not address

the viability of such a theory under UCC § 2-208 and its corresponding case law, but I do note

that New York courts have made it clear that a cause of action for breach of the implied

obligation of good faith and fair dealing "may not be used as a substitute for a non-viable claim

for breach of contract." Sheth v. N.Y. Life Ins. Co., 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000).

In sum, Global may not claim a breach of the implied obligation of good faith and fair

dealing where, as here, the alleged breach would contradict the express terms of the contract.

See Sheth, 709 N.Y.S.2d at 75.  Accordingly, the Court dismisses Count I of Defendant's

Counterclaim.


D.     COUNT II: FRAUD

Count II of Global's Counterclaims asserts a claim of fraud.  See Countercls., Count II.

Global alleges that "Bellco knew its representations concerning the reinstatement of its

Account/line of credit were false or made with reckless disregard as to their truth or falsity, and

made representations without the intent to reinstate Global's Account/line of credit for any

extended period of time." Countercls. ¶ 49.  Global claims that Bellco's statements were

"intended and designed to mislead Global concerning the stability of its Account/line of credit,"

Countercls. ¶ 51, and that "[a]s a direct and proximate result of the misrepresentations of Bellco,

Global lost gross revenues, profits and customers." Countercls. ¶ 55.

Under New York law, the elements of a counterclaim of fraud are: (1) a material false

representation made by the counterclaim defendant, (2) that this representation was made with

the intent to defraud, (3) reasonable reliance upon the representation by the counterclaim

9

plaintiff, and (4) resulting damage to the counterclaim plaintiff.  See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001).

Additionally, a claim of fraud must meet the heightened pleading standard established in Fed. R. Civ. P. 9(b), which requires that "a party must state **with particularity** the circumstances constituting fraud or mistake."  Rule 9(b)'s particularity requirement has been interpreted to mean "that when a complaint charges fraud, it must [1] detail the statements (or omissions) that the [counterclaim] plaintiff contends are fraudulent, [2] identify the speaker, [3] state where and when the statements (or omissions) were made, and [4] explain why the statements (or omissions) are fraudulent."  Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996); see also Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); Ouakine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).

Though Global argues that it has met Fed. R. Civ. P. 9(b)'s heightened pleading standard, Def.'s Mem. in Opp'n to Pl.'s Mot. Dismiss Countercls. ¶ 11, I find that Global has not pled any of the elements of fraud with sufficient particularity to withstand a motion to dismiss.  Global does not "detail the statements (or omissions)" allegedly made by Bellco, but merely refers to Bellco's alleged "misrepresentations" without further explanation.  See Countercls., Count II. Global fails to identify the speaker of the alleged "misrepresentations."  Global references the years in which it alleges the fraudulent statements were made, Countercls. ¶¶ 31, 35, 37, but such references do not adequately identify **where** the statements (or omissions) were made.  Lastly, Global fails to explain why the alleged "misrepresentations" are actually fraudulent.  Thus, Global's counterclaim of fraud is too vague to meet the "with particularity" standard as defined under New York law.  See Harsco Corp., 91 F.3d at 347.

10

Accordingly, I dismiss Count II of Defendant's Counterclaim.


E.    COUNT III: NEGLIGENT MISREPRESENTATION

        Count III of Global's Counterclaims asserts a claim of negligent misrepresentation.  See

Countercls., Count III.  Global alleges that "Bellco knew or should have known that the

representations concerning the reinstatement of its Account/line of credit were false,"

Counterclaims ¶ 58, and that "Bellco knew or should have known that Global relied upon its

false representations that the Account/line of credit was reinstated."  Countercls. ¶ 59.  Global

claims that, "[a]s an actual and proximate result of Global's justifiable reliance on Bellco's

foregoing misrepresentations, Global has lost gross revenues, profits and customers."

Countercls. ¶ 62.

        Under New York law, the elements of negligent misrepresentation are: "[1] the

[counterclaim] defendant had a duty, as a result of a **special relationship**, to give correct

information; [2] the [counterclaim] defendant made a false representation that he or she should

have known was incorrect; [3] the information supplied in the representation was known by the

[counterclaim] defendant to be desired by the [counterclaim] plaintiff for a serious purpose; [4]

the [counterclaim] plaintiff intended to rely and act upon it; and [5] the plaintiff reasonably relied

on it to his or her detriment."  EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp.

2d 265, 280 (S.D.N.Y. 2004) (quoting Greenberg v. Chrust, 198 F. Supp. 2d 578, 584 (S.D.N.Y.

2002) (emphasis added)).

        Where a valid contract exists, the required "special relationship" takes on a more specific

meaning: the duty "must spring from circumstances extraneous to, and not constituting elements

11

of the contract, although it may be connected with and dependent upon the contract." JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004) (quoting Clark-Fitzpatrick, Inc. v. Long Island RR Co., 516 N.E.2d 190, 194 (N.Y. 1987). If no interest extraneous to the contract exists between the parties, then "the only interest at stake is that of holding the [counterclaim] defendant to a promise [and] courts have said that the [counterclaim] plaintiff may not transmogrify the contract claim into one for tort." JP Morgan Chase Bank, 350 F. Supp. 2d at 401 (quoting Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir. 1980)).

Thus, not all alleged misrepresentations between buyers and sellers of goods amount to a cause of action for negligent misrepresentation. Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996). Rather, to support a claim for negligent misrepresentation in the contract context, parties must share a relationship closer than that of an ordinary buyer and seller. Century Pac., Inc. v. Hilton Hotels Corp., 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004). A "special relationship" may exist between contracting parties where one party sought to induce the other into a business transaction by making certain statements or providing specific information with the intent that the party rely on those statements or information. Id.; see Kimmell, 675 N.E.2d at 454-55; Suez Equity Investors, 250 F.3d at 103; N.Y. Islanders Hockey Club, LLP v. Comerica Bank-Tex., 71 F. Supp. 2d 108, 119 (E.D.N.Y. 1999).

"Courts in [the Second Circuit] have held that a determination of whether a special relationship exists is highly fact-specific and 'generally not susceptible to resolution at the pleadings stage.'" Century Pac., Inc., 2004 WL 868211, at *8 (quoting Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 536 (S.D.N.Y. 2001)); see, e.g., Suez Equity Investors, 250 F.3d at 103-104; Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines,

12

S.A., 247 F. Supp. 2d 352, 366-367 (S.D.N.Y. 2002); Kimmell, 675 N.E.3d at 454.  However, in

JP Morgan Chase Bank, the district court distinguished circumstances where it is appropriate for

the court to dismiss a claim for negligent misrepresentation on the pleadings and where a court

should permit the claim to progress:

> In each of these cases [where resolution at the pleadings stage was not
> appropriate], the facts alleged in the complaint could fairly be read to justify a
> finding of a special relationship of trust and confidence, above that created by
> the contracts involved.  By contrast, where no such allegations have existed,
> courts have not hesitated to dismiss negligent representation claims on
> motions to dismiss.

350 F. Supp. 2d at 403; see, e.g., LaSalle Bank Nat'l Ass'n v. Citicorp Real Estate, Inc., 2003

WL 1461483, at *3 (S.D.N.Y. Mar. 21, 2003); I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc.,

2004 WL 444071, at *2-*3; Doehla v. Wathne Ltd., Inc., 1999 WL 566311, at *20; Clark-

Fitzpatrick, 516 N.E.2d at 194.

     In the face of strong precedent to the contrary, Global summarily states, without the

supporting case law, that "Defendants are not required to argue a special relationship outside of

the Purchase Agreement where they have already alleged that Bellco made certain statements and

provided specific information with the intent that Defendants rely on that information." Def.'s

Mem. in Opp'n to Pl.'s Mot. Dismiss Countercls. ¶ 14; see also Pl.'s  Mem. in Supp. of Mot.

Dismiss Countercls. ¶ 13 (arguing that Global fails "to plead any facts or allegations that its

relationship with Bellco was anything more than that of an ordinary buyer and seller.").  Despite

Global's assertion to the contrary, their failure to plead a "special relationship" between the

parties defeats their claim of negligent misrepresentation.  See JP Morgan Chase Bank, 350 F.

Supp. 2d at 403.   Accordingly, Count III of Defendant's Counterclaims is dismissed.

13

F.    COUNT IV: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Count IV of Defendant's Counterclaims asserts a claim of "intentional" (tortious) interference with contractual relations.  See Countercls., Count IV.  Specifically, Defendant alleges that "Bellco's suspensions of Global's Account/line of credit was willful, wanton, performed in reckless disregard for the legitimate interests of Global and were outrageous," Countercls. ¶ 67, and that "[a]s a direct and proximate result of Bellco's suspensions of Global's Account/line of credit, Global lost gross revenues, profits, and customers."  Countercls. ¶ 68.

Under New York law, the elements of a tortious interference with contractual relations claim are: "[1] that a valid contract exists; [2] that a 'third party' had knowledge of the contract; [3] that the third party intentionally and improperly procured the breach of contract; and [4] that the breach resulted in damage to the [counterclaim] plaintiff."[3]  Orange County Choppers, Inc. v. Olaes Enter., Inc., 497 F. Supp. 2d 541, 561 (S.D.N.Y. 2007) (quoting Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001)); see also Albert, 239 F.3d 256 (2d Cir. 2001) (citing Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996); Net2Globe Int'l, Inc. v. Time Warner Telecomm. of N.Y., 273 F. Supp. 2d 436, 461-62 (S.D.N.Y. 2003).

Bellco argues that Global's counterclaim fails to identify any "specific contracts between itself and other customers, fails to provide any factual allegations as to the terms of the alleged contracts, fails to explain how they were breached, [] [and], more importantly, how Bellco is the

---

[3]  Although Global does not identify specific parties, the Court assumes that Global seeks to establish Bellco as the "third party" and whatever contracts Global might have had with its customers as the contracts at issue in Count IV (rather than asserting that Bellco interfered with the underlying purchase agreement between Global and Bellco).  See Finley, 79 F.3d at 1295 (citing Israel v. Wood Dolson Co., 134 N.E.2d 97, 120 (N.Y. 1956) ("A plaintiff bringing a tortious interference [with a contract] claim must show that the defendants *were not parties to the contract*.")

14

proximate cause of Global's breach of these alleged contracts." Pl. Mot. Dismiss Countercls. ¶ 22 (Doc. No. 18). The Court agrees that Global fails to adequately plead the aforementioned elements, and will dismiss Count IV.

New York law requires some factual specificity in pleading claims of tortious interference with a contract. See Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 315 (N.D.N.Y. 2007) (citing Antonios A. Alevizopoulos & Assoc. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000)). A review of Global's pleadings does not reveal any factual allegation that Bellco knew of any specific contracts Global had with its customers or that Bellco actually induced a customer to breach a contract with Global. These omissions are sufficient to support our dismissal of Count IV. See Am. Bldg. Maint. Co. of N.Y., 515 F. Supp. 2d at 315 (dismissing a claim of tortious interference with a contract where plaintiff failed to allege the existence of a particular contract, defendant's knowledge of a contract, or an actual breach on the part of a customer).

In addition, "a [counterclaim] plaintiff must allege that the '[counterclaim] defendant [intentionally] used wrongful means to induce the third party to breach the contract.'" Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002) (citing Guard-Life Corp. v. S. Parker Mfg. Corp., 406 N.E.2d 445, 448-49 (N.Y. 1980)). "'Wrongful means' includes physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." Id. (citing Guard-Life Corp., 406 N.E.2d at 449). Global has not alleged that Bellco intentionally used any of these "wrongful means;" rather, it alleges that because Bellco suspended its line of credit to Global, Global lost "gross revenues, profits, and customers." Compl. ¶ 68. By Global's own admission, these allegations more properly support a

15

claim for tortious interference with business relations, and the Court also finds them insufficient to make out element three of a claim for tortious interference with contractual relations.  <u>See</u> Def. Mem. in Opp. to Pl. Mot. Dismiss Countercls. at 15-17 ("Count IV of Defendant's Counterclaim may be treated as a claim for tortious interference with its business relations."); <u>see also</u> <u>Util. Metal Research, Inc. v. Coleman</u>, 2008 WL 850456, at *7 (E.D.N.Y. Mar. 28, 2008) ("Vague references to an intentional course of conduct are insufficient to sustain [a claim of tortious interference with a contract].").

Hence, Count IV of Defendant's Counterclaims is dismissed.


G.    <u>COUNT V: INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS</u>[4]

Count V of Defendant's Counterclaims asserts a claim of interference with prospective business relations.  <u>See</u> Countercls., Count V.  Although Global entitles its claim "interference with **prospective** business relations," its counterclaim states that, "[a]s a direct and proximate result of Bellco's suspension of Global's Account/line of credit, Global was unable to obtain product **to fill its customers' orders** as well as finance the wholesale purchase of product **for customers at the level it was able to before Bellco's first suspension**." Countercls. ¶ 71.  As a result, Global claims that it "lost the opportunity to sell as much product as it did before the [a]ccount/line of credit was suspended." Countercls. ¶ 72.  This language could fairly be interpreted by the Court as a claim for intentional interference with **current** business relations.

---

[4] Tortious interference with business relations is also known as interference with economic advantage, prospective advantage, or pre-contractual relations.  <u>See</u> <u>Martin Ice Cream, Co. v. Chipwich, Inc.</u>, 554 F. Supp. 933, 945 (S.D.N.Y. 1983); <u>Six West Retail Acquisition, Inc. v. Sony Theater Mgmt.</u>, 2000 WL 264295, at *n. 46 (S.D.N.Y. Mar. 9, 2000); <u>Aventis Envtl. Sci.USA LP v. Scotts Co.</u>, 383 F. Supp. 2d 488, 512 (S.D.N.Y. 2005).

16

Thus, the Court will treat Global's claim as that of both interference with current **and** prospective business relations.

Under New York law, the elements of intentional interference with business relations are: (1) a business relationship with a third party; (2) that the counterclaim defendant knew of that relationship and intentionally interfered with it; (3) the counterclaim defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the counterclaim defendant's interference caused injury to the counterclaim plaintiff's relationship with the third party.  Darby Trading, Inc. v. Shell Int'l Trading and Shipping Co., Ltd., 2008 WL 852787, at *11 (S.D.N.Y. Mar. 31, 2008) (quoting State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 171 (2d Cir. 2004)); see Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003).

The first element, a business relation with a third party, does not require a formal, binding contract; interference "with a continuing business or other customary relationship not amounting to a formal contract" is sufficient.  Hannex Corp. v. GMI, Inc., 140 F.3d 184, 205 (2d Cir. 1998). Global satisfies this element by asserting business relationships with third party customers. Countercls. ¶ 71.  However, Global fails to allege that Bellco knew of these business relationships or that Bellco **intentionally** interfered with them.[5]  As such, Global fails to satisfy the second element requiring that the counterclaim defendant knew of the business relationship and intentionally interfered with it.

Additionally, Global fails to satisfy the third element requiring that  Bellco acted solely out of malice, or used dishonest, unfair, or improper means.  To satisfy this element, the

---

[5] Global does allege that "Bellco intended to harm Global by interfering with its prospective business relations," Countercls. ¶ 73, but not the pre-exiting business relations previously identified.  See Countercls. ¶ 71.

counterclaim plaintiff must allege that the actions of the counterclaim defendant constituted a

crime or independent tort.  See Darby Trading, Inc., 2008 WL 852787, at *12.  However, Global

makes no allegations that Bellco engaged in criminal activity, and the Court has dismissed

Global's remaining tort claims against Bellco.  Hence, Global fails to satisfy the third element.

Because Global fails to meet the second and third elements of interference with business

relations, it is unnecessary for the Court to address the fourth element.

   To the extent that Global alleges interference with **prospective** business relations,

Countercls. ¶ 73, a heightened pleading standard applies.  The second element requires a higher

degree of interference for any claim alleging interference with a prospective business

relationship.  See Peckler v. Health Ins. Plan of Greater N.Y., 2008 WL 680713, at *2 ( N.Y.

Sup. Ct. Mar. 13, 2008).  The counterclaim defendant must have directly engaged a third party

and "convince[d] [it] not to enter into a business relationship with [the counterclaim] plaintiff."

Id. (quoting Fonar Corp. v. Magnetic Resonance Plus, 957 F. Supp. 477, 483 (S.D.N.Y. 1997)).

   The third element also has a distinct standard for interference with prospective business

relations.  Because the counterclaim plaintiff's expectation in prospective business relations is

awarded less protection than existing business relations, the counterclaim plaintiff must show

that the counterclaim defendant used wrongful means.  See NBT Bancorp, Inc. v. Fleet/Norstar

Fin. Group, Inc., 664 N.E.2d 492, 496 (N.Y. 1996); Guard-Life Corp., 406 N.E.2d at 449.

Generally, the counterclaim defendant's conduct must constitute a crime or an independent tort.

Darby Trading, Inc., 2008 WL 852787, at *12.  However, the third element is also satisfied

where the counterclaim defendant acted with malice or "for the sole purpose of inflicting

18

emotional harm on the [counterclaim] plaintiff."[6] Id. (quoting Carvel Corp. v.Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004)). The "[counterclaim] defendant's conduct [must be] motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or economic consideration." Shared Commc'ns Servs. of ESR, Inc. v.. Goldman Sachs & Co., 803 N.Y.S.2d 512, 513 (N.Y. App. Div. 2005); see Newport Serv. & Leasin, Inc. v. Meadowbrook Distrib. Corp., 794 N.Y.S.2d 426, 427-28 (N.Y. App. Div. 2005) (affirming summary judgment in favor of defendant where defendant acted out of it own economic self-interest rather than solely out of desire to harm plaintiff). "As one element of the tort [of interference with prospective business relations] is that the **sole purpose** of the [counterclaim] defendant's actions be to harm the [counterclaim] plaintiff, the existence of self-interest negates this element and if exercised legitimately -- without fraudulent means -- thus eviscerates the entire claim." Imtrac Indus., Inc. v. Glassexprt Co., Ltd., 1996 WL 39294, at *11 (S.D.N.Y. Feb. 1, 1996); see Campo v. First Nationwide Bank, 857 F. Supp. 264, 273 (E.D.N.Y. 1994); PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 269 (2d Cir. 1987).

As noted above, Global had adequately pled the first element in claiming business relationships with third party "customers." Countercl. ¶ 71. However, Global fails to meet the second element's heightened standard for interference with a **prospective** business relationship. Global makes no allegation that Bellco directly engaged with Global's third party customers or attempted to convince any third party customer not to enter into a business relationship with

---

[6] An additional exception may exist where the counterclaim defendant applied "extreme and unfair" economic pressure on the counterclaim plaintiff. Carvel Corp., 818 N.E.2d at 1105. The Court of Appeals of New York, however, has yet to acknowledge this exception. Id. at 1104-1105. However, for the purposes of this case, the additional exception is irrelevant because no allegation of "extreme and unfair" economic pressure has been made.

Global.  See Countercls., Count V.  Additionally, Global cannot meet the third element requiring a crime or independent tort because Global made no criminal allegations against Bellco, and this Court has dismissed Global's tort counterclaims against Bellco.  Global also fails to allege that Bellco acted with malice or for the sole purpose of harming Global.  Rather, by Global's own admission, Bellco was uncomfortable "a with a line of credit balance greater than $500,000.00" and wanted Global to pay down its outstanding balance.  See Countercls. ¶¶ 34, 50.  Thus, Global's allegations against Bellco do not satisfy the second or third elements necessary for a claim for interference with prospective business relations.

Count V of Defendant's Counterclaims is accordingly dismissed.


H.   CONCLUSION

In sum, the Court dismisses all of Defendant's Counterclaims.  Count I is dismissed because the obligation of good faith and fair dealing, as defined by Global, contradicts the express terms of the parties signed Purchase Agreement.  Count II is dismissed for failure to meet the level of specificity required by the heightened pleading standards for a claim of fraud.  Count III is dismissed for failure to plead a special relationship between the parties.  Finally, Counts IV and V are dismissed for failure to adequately plead all elements necessary to the respective claims.


My Order follows this Memorandum.

20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BELLCO DRUG CORP., | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLOBAL SUPPLY FORCE, INC., et al. | : | NO. 07-4872 |

# O R D E R

**AND NOW**, this 25th day of July, 2008, it is hereby **ORDERED** that, having considered Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. No. 18) and accompanying Memorandum of Law (Doc. No. 18-4) and Defendant's Response (Doc. No. 21) and accompanying Memorandum of Law (Doc. No. 22), Defendant's counterclaims are **DISMISSED WITH PREJUDICE** on all five counts.

BY THE COURT:

L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE